UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYLA CASHMAN, by and through her guardian ad litem BERNADETTE HILGEMAN, STEPHEN CASHMAN,<br><br>                    Plaintiff,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT, et al.,<br><br>                    Defendants. | Case No.: 08cv0519 AJB (POR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANTS' EX PARTE APPLICATION; AND DENYING PLAINTIFFS' EX PARTE APPLICATION**<br><br>[Docs. 54, 60, 65] |

Presently before the Court are Defendants' Motion for Partial Summary Judgment (Doc. 54), Defendants' Ex Parte Application for Leave to File Excess Pages (Doc. 60), and Plaintiffs' Ex Parte Application for Leave to File an Evidentiary Objection (Doc. 65). For the reasons set forth below, the Court (1) **GRANTS** Defendants' Motion for Partial Summary Judgment, (2) **DENIES** as moot Defendants' Ex Parte Application, and (3) **DENIES** Plaintiffs' Ex Parte Application.

**I.**

**BACKGROUND**[1]

In March 2007, when Kayla Cashman ("Kayla") was a fifteen-year-old sophomore at Patrick Henry High School, she went for an allegedly unauthorized "joyride" in a school golf cart following a

---

[1] Although Plaintiffs and Defendants disagree on some of the facts of this case, the Court finds that the facts set forth in this section are supported by the evidentiary record and thus do not raise a genuine issue of material fact. For Defendants' Separate Statement of Undisputed Material Facts ("SS"), see Doc. 54-2.  For Plaintiffs' objections and Defendants' reply thereto, see Docs. 59-3, 61-3, and 61-4.

track meet. She ultimately lost control of the golf cart, crashed it, and fractured her ankle. (SS, Facts 1-5.) Vice Principal James Good suspended her for three days, and School Police Officer Jesus Montana charged her with joyriding and vandalism. (SS, Facts 30-31, 86-87.) Officer Montana submitted his arrest report to the District Attorney ("DA"), who elected to prosecute Kayla for joyriding and vandalism. (SS, Facts 33-36.) The criminal case went to trial in Juvenile Court, but the Court dismissed the charges after the close of the prosecution's case, concluding that the DA had not proven the allegations beyond a reasonable doubt. (SS, Facts 37-40.)

Kayla and her father then sued the San Diego Unified School District, as well as Mr. Good and Officer Montana as individuals. Plaintiffs filed the Second Amended Complaint ("SAC") on February 27, 2009. (Doc. 27.) It alleges violations of 4 U.S.C. § 1983 for unreasonable seizure (against Officer Montana and Mr. Good), and false arrest and malicious prosecution (against Officer Montana), as well as state-law claims for negligence, false arrest, and violations of Civil Code section 52.1 (which provides a cause of action for a violation of constitutional rights). In addition, Mr. Cashman asserts a claim for intentional infliction of emotional distress, and both Plaintiffs seek punitive damages. Defendants filed the instant Motion for Partial Summary Judgment on May 27, 2011.[2]

## II.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment

---

[2] Defendants request the Court to take judicial notice of (1) the Second Amended Complaint filed on March 17, 2009, and (2) the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, dated March 9, 2010. (Doc. 54-3.) The Court finds that these documents are judicially noticeable under Fed. R. Evid. 201(b) and grants Defendants' request.

by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id.*

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.
## DISCUSSION

In their Motion for Partial Summary Judgment, Defendants argue that: (1) all of the Section 1983 claims fail because the individual defendants are entitled to qualified immunity from liability, and because Officer Montana had probable cause to arrest Kayla; (2) the state-law claims for violations of Civil Code 52.1 and false arrest fail because the individual defendants are entitled to discretionary immunity, and because the undisputed evidence establishes the existence of probable cause; (3) Mr. Cashman's claim for intentional infliction of emotional distress raises no triable issue of fact because the District engaged in no "outrageous" conduct; and (4) there is no evidence to support an award of punitive damages, based on either state or federal claims. Each of these issues is discussed in turn below.

**A.     Section 1983 Claims**

Defendants argue that the Section 1983 claims fail because both Officer Montana and Mr. Good are entitled to qualified immunity from liability, and regardless of immunity, they fail on the merits because Officer Montana had probable cause to arrest Kayla.

It appears to the Court that both immunity and the merits hinge on the existence of probable cause. The Court finds that Officer Montana was aware of the following facts before he arrested Kayla:

- The school custodian told him a student had stolen a golf cart and crashed it. (SS, Fact 6.)
- The track coach said Kayla had taken the golf cart without his permission, and that another student had been in the golf cart with Kayla. The track coach confirmed that Kayla had crashed the golf cart. (SS, Facts 7-11.)
- One of the students who had express permission to drive the golf cart said he had not given Kayla permission to drive it. (SS, Facts 12-13.)
- Delinda Tamagni, an athletic trainer for the girls' track team, stated that Kayla called her the night of the track meet and apologized for "being stupid and screwing around," and that Kayla felt "really bad" about what had happened. (SS, Facts 14-16.)
- The cost to repair the golf cart was $466. (SS, Fact 17.)
- Connie Quach, the student in the golf cart with Kayla, told him that she saw Kayla driving the golf cart and got in the passenger seat, and that Kayla indicated she knew they should not be in the golf cart. (SS, Facts 18-21.)

Given this evidence, the Court finds that based on the facts he knew at the time, Officer Montana had probable cause to arrest Kayla for joyriding and vandalism.

   1.   *Qualified Immunity*

Qualified immunity shields government officials from civil liability for exercising their discretionary functions when their actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cartier v. Lussier*, 955 F.2d 841, 843 (2d Cir. 1992). The "dispositive inquiry" is whether it would be "clear to a reasonable officer that his conduct was unlawful" under the circumstances. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009). Courts must objectively analyze "what a reasonable officer in the defendant's position would believe." *Cartier*, 955 F.2d at 843.

Here, qualified immunity will protect Officer Montana and Mr. Good as long as it was objectively reasonable for them to believe that Officer Montana had probable cause to arrest Kayla. The Court agrees with Defendants that the same undisputed evidence establishes both that Officer Montana had probable cause to arrest Kayla, and that it was objectively reasonable for Officer Montana and Mr. Wood to believe the arrest was lawful.

As noted above, the Court finds that the facts suffice to form probable cause to arrest Kayla for joyriding and vandalism, and that it was therefore objectively reasonable for Officer Montana and Mr. Good to believe the arrest was lawful. Moreover, the existence of probable cause as to both crimes was confirmed when the DA's office independently elected to prosecute Kayla. The DA's belief that the evidence warranted prosecution further supports that it was objectively reasonable for Officer Montana and Mr. Good to believe the arrest was lawful. Consequently, Officer Montana and Mr. Good are entitled to qualified immunity from liability.

### 2. *The Merits*

Regardless of immunity, Defendants assert that the 1983 claims also fail on the merits, since Kayla cannot prove that a defendant, acting under the color of state law, deprived her of a constitutional right. Plaintiffs' 1983 claim is based on three theories: unreasonable seizure, false arrest, and malicious prosecution.

Plaintiffs claim Officer Montana had no probable cause to arrest Kayla, since Kayla had no intent to commit the crime. Kayla allegedly told Officer Montana she was helping a visiting coach deliver track equipment to his car, and the accident occurred while she was returning to the track field. However, as Defendants point out, Officer Montana was free to disbelieve Kayla's statement, given the other facts he knew at the time, including Connie Quach's and Coach Tamagni's statements. Moreover, with regard to joyriding, the element of intent is established as long as Kayla intended to deprive the owner of possession of the vehicle for *any* period of time, no matter how brief. Joyriding does not require an intent to steal. *See People v. Garza*, 35 Cal. 4th 866, 876 (2005) ("A person can violate section 10851(a) 'either by taking a vehicle with the intent to steal it or by *driving it with the intent only to temporarily deprive the owner of possession* (i.e., joyriding).'") (emphasis added). Therefore, Plaintiffs' arguments regarding Kayla's alleged lack of intent are not persuasive.

The Court concludes that none of Plaintiffs' three theories gives rise to a triable issue of material fact under Section 1983. As explained above, the undisputed evidence establishes that Officer Montana had probable cause to arrest Kayla. With the existence of probable cause, the unreasonable seizure and false arrest claims fail. As to malicious prosecution, there is no evidence that Officer Montana maliciously caused Kayla to be prosecuted. Rather, he simply submitted his arrest report to the DA, who independently elected to prosecute her.

Because the undisputed evidence indicates that Officer Montana had probable cause to arrest Kayla, Plaintiffs' Section 1983 claims fail—both on the merits and due to qualified immunity. The Court therefore grants Defendants' Motion for Partial Summary Judgment as to this claim.

**B.     State-Law Claims**

Defendants argue that like the Section 1983 claims, Plaintiffs' state-law claims fail, both on the merits and due to discretionary immunity. The Court agrees.

*1.     Discretionary Immunity*

Decisions by school officials "to impose discipline on students and conduct investigations of complaints" are discretionary acts that give rise to immunity to liability. *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997). Defendants claim Mr. Good and Officer Montana are entitled to immunity from civil liability for exercising their discretion in investigating the incident in question and for imposing discipline on Kayla. By extension, the District is afforded the same protection.

Plaintiffs argue that no immunity exists for discretionary acts if the acts complained of are beyond the course and scope of the public employee's duties. Plaintiffs assert that Defendants' knowing and intentional violation of Kayla's constitutional rights falls outside of discretionary immunity. However, their argument is conclusory and unsupported, and the Court has determined that Kayla's constitutional rights were not violated. Without evidence to the contrary, Good's and Montana's conduct was seemingly well within the course and scope of their employment, and they are afforded immunity from liability.

*2.     The Merits*

Defendants further argue that regardless of immunity, the Section 52.1[3] and false arrest claims fail to give rise to a triable issue of material fact. Kayla's state-law claims are based on the same allegations that form the basis of her Section 1983 claims. A defense to both state-law causes of action is the existence of probable cause, and as explained above, undisputed evidence establishes that Officer Montana had probable cause to arrest Kayla.

Because Plaintiffs have not raised a question of fact regarding the existence of probable cause, and because Defendants are entitled to discretionary immunity, the Court grants Defendants' Motion for Partial Summary Judgment as to the state-law claims.

**C.     Intentional Infliction of Emotional Distress**

Mr. Cashman asserts a cause of action for intentional infliction of emotional distress ("IIED"). Mr. Cashman's claim is based on his conversation with Mr. Good, in which he claims Mr. Good suspended Kayla only after Mr. Cashman refused to pay for the damage to the golf cart. Mr. Cashman asserts that Mr. Good showed him an estimate of the cost of repair to the golf cart, and said "this would all go away" if Mr. Cashman agreed to pay for the damage.

To prove IIED, Plaintiffs must show that Mr. Good's conduct was "outrageous" and was intended to cause Mr. Cashman to suffer emotional distress, and that Mr. Cashman then suffered severe emotional distress as a result. Even accepting Mr. Cashman's account of the discussion in its entirety, it does not rise to the requisite level of outrageous conduct. The evidence indicates that Mr. Good showed Mr. Cashman the suspension papers *during the meeting*. (SS, Fact 86.) Given that the suspension papers had already been drawn up, Mr. Good clearly did not decide to suspend Kayla only after Mr. Cashman refused to pay for the damage. Plaintiffs have therefore not shown any conduct that could be considered "outrageous." Additionally, Plaintiffs have not shown the conduct was intended to cause Mr. Cashman emotional distress, or that he then suffered a level of distress that was sufficiently "severe." According to Mr. Cashman, he was "upset" but not "angry," and it was not a "hostile situation." (SS, Facts 88-89.)

Plaintiffs' IIED claim therefore fails to raise a triable issue of material fact. Their argument is unsupported by the record, and the mere fact that Mr. Cashman was upset does not rise to the level of IIED. The Court therefore grants Defendants' Motion for Partial Summary Judgment as to this claim.

---

[3] Section 52.1 provides a right of action to any individual whose enjoyment of a constitutional right has been interfered with by means of threats, intimidation, or coercion.

**D.      Punitive Damages**

Finally, Defendants argue that Plaintiffs' claims for punitive damages fail to raise a triable issue of fact, whether considered under the federal standard or the state-law standard.

Under federal law, a plaintiff may receive punitive damages based on a 1983 violation only after proving the defendant's conduct amounted to a reckless or callous indifference to the plaintiff's rights, or an intentional violation of federal law. *Smith v. Wade*, 461 U.S. 30, 51 (1983). Under state law, a plaintiff must prove the defendants acted with malice, oppression, or fraud, in accordance with Cal. Civ. Code § 3294(c). Additionally, the plaintiff must show that the defendant's conduct was "outrageous."

The Court agrees with Defendants that there is no factual basis to support an award of punitive damages. Officer Montana investigated whether Kayla committed a crime when she drove and crashed the golf cart. When his investigation led him to believe there was probable cause, he arrested her for illegal joyriding and vandalism. Mr. Good disciplined Kayla, informed her father of the suspension, and allegedly offered to resolve the matter if Kayla took responsibility for the damage to the golf cart. There is simply no evidence that either Mr. Good or Officer Montana engaged in conduct that was outrageous, malicious, or reckless. Rather, they were merely acting within the scope of their duties as school officials disciplining a student who violated school rules. Plaintiffs' arguments to the contrary are flimsy and unsupported by the record. Because Plaintiffs have failed to meet either the federal or state standard for awarding punitive damages, the Court grants Defendants' Motion for Partial Summary Judgment as to this claim.

## IV.

## DEFENDANTS' EX PARTE APPLICATION

Defendants' Reply to their Motion for Partial Summary Judgment exceeded the allowable page limit and was accompanied by a separate Ex Parte Application for Leave to File Excess Pages. (Doc. 60.) Defendants claim the extra pages were necessary because the Plaintiffs' Opposition contained new issues that were not alleged in their Complaint (specifically, violation of Fifth and Fourteenth Amendment rights, stemming from allegedly inadequate *Miranda* warnings and coercive interrogation). Defendants wished to provide a comprehensive response that included reference to all the applicable evidence, which required more than the allowable ten pages.

The Court need not consider claims raised in Plaintiffs' Opposition that were not alleged in the operative Complaint. Consequently, Defendants' response to these improper claims is unnecessary, and the issue of excess pages is moot. The Court therefore denies as moot Defendants' Ex Parte Application for Leave to File Excess Pages.[4]

## V.
## PLAINTIFFS' EX PARTE APPLICATION

Plaintiffs attempted to file an objection to evidence used in Defendants' Reply, but the filing was rejected, since Plaintiffs did not have leave to respond or object to Defendants' Reply. Plaintiffs then filed the instant Ex Parte Application seeking leave to file their evidentiary objection. (Doc. 65.)

The Court's June 6, 2011 Order setting the current briefing schedule explicitly noted that the "parties shall not file sur-replies . . . ." (Doc. 55.) Additionally, under Chambers' Rules, any objections relating to the motion briefing must be set forth in the opposition or reply, and parties must obtain leave of Court before filing any sur-replies or a separate set of objections. The Court therefore denies Plaintiffs' Ex Parte Application.

## VI.
## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment, **DENIES** as moot Defendants' Ex Parte Application for Leave to File Excess Pages, and **DENIES** Plaintiffs' Ex Parte Application for Leave to File Objections to Evidence.

**IT IS SO ORDERED.**

DATED: November 8, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

[4] To clarify, the Court has considered those portions of Defendants' Reply pertaining to the original claims (Doc. 61 at pp. 15-22), but not those portions pertaining to the new claims improperly asserted in Plaintiffs' Opposition (Doc. 61 at pp. 1-15.)